**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JANE DOE,

*Plaintiff*,

v.

JOHN/JANE DOES 1-4, all individuals,

*Defendants*.

Civil Action No. 2:26-cv-08519

**PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

COMES NOW Plaintiff Jane Doe, through her undersigned counsel, and respectfully moves this Court to permit her to pursue this action under the pseudonym "Jane Doe." In support of this Motion, Plaintiff submits the accompanying memorandum of law and proposed order.

Dated: November 6, 2026

**FOX ROTHSCHILD LLP**

*/s/ Samantha Banks*

Samantha Banks (PA Bar No. 319401)
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, Pennsylvania 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
sbanks@foxrothschild.com

Joseph L. Meadows (pro hac to be filed)
Stefan Palys (pro hac to be filed)
2020 K Street NW, Suite 500
Washington, DC 20006
Tel: (202) 461-3100
Fax: (202) 461-3102
jmeadows@foxrothschild.com
spalys@foxrothschild.com

*Counsel for Plaintiff Jane Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE,<br>*Plaintiff*,<br>v.<br>JOHN/JANE DOES 1-4, all individuals,<br>*Defendants*. | Civil Action No. 2:26-cv-08519 |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM**

Plaintiff Jane Doe respectfully submits this Memorandum of Law in support of her Motion to Proceed Under a Pseudonym. Plaintiff is a private citizen who has been falsely and publicly identified – by name, photograph, home addresses, and personal telephone numbers – as a woman who had a sexual relationship with convicted sex offender Jeffrey Epstein. (Compl. ¶ 1.) Plaintiff is not that woman. (Compl. ¶¶ 1, 54–55.)

Defendants, posting from pseudonymous accounts on X (formerly Twitter), seized upon the release of the so-called "Epstein files" to falsely accuse Plaintiff of having a criminal and/or sexual relationship with Epstein, and then doxxed her – publishing her full name, age, employment and education history, residential addresses, telephone numbers, a photograph, and family members' names – to a global audience of hundreds of thousands and, collectively, over one million viewers. (Compl. ¶¶ 1, 15, 29–51, 79.)

Disclosure of Plaintiff's true identity in these proceedings would re-inflict and compound the very harms she seeks to redress: the false public association of her name with Epstein's sexual crimes and the attendant threats to her safety and privacy. (Compl. ¶ 1.) As set forth

below, the factors articulated by the Third Circuit in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011), overwhelmingly favor permitting Plaintiff to proceed anonymously.

## I. FACTUAL BACKGROUND

In 2013, Plaintiff was invited by a former contact to a dinner, where she met a woman who identified herself as working for a non-profit organization and whom Plaintiff later learned was Epstein's personal assistant. (Compl. ¶¶ 20–21.) After learning Plaintiff was searching for employment, the woman asked for Plaintiff's resume, which Plaintiff provided. (Compl. ¶ 21.) The woman then arranged for Plaintiff to meet her at what turned out to be an Epstein residence, where Plaintiff met Epstein. (Compl. ¶ 22.) Plaintiff was deeply disturbed by the encounter, told Epstein's personal assistant never to invite her to see Epstein again, and never had any other contact with him. (Compl. ¶¶ 22–23.)

Beginning in February 2025, the United States Department of Justice released tranches of investigatory materials related to Epstein to the public. (Compl. ¶ 25.) Plaintiff's full name and other personally identifying information appeared in these files in a non-criminal context when they were released and for a period of time thereafter – because the Department of Justice erroneously released an unredacted copy of the resume Plaintiff had provided to Epstein's personal assistant in 2013. (Compl. ¶ 27.) Separately, the files describe another woman sharing Plaintiff's national origin, whose name is redacted and who is described as having an ongoing sexual relationship with Epstein and/or participating in acts associated with sexual exploitation and trafficking ("Ms. A"). (Compl. ¶ 28.) The files themselves showed that Ms. A lived in a particular overseas city where Plaintiff had never lived. (Compl. ¶ 58.)

Despite these clear distinctions, Defendants deliberately and falsely conflated Plaintiff with Ms. A, publicly identifying Plaintiff as that woman. (Compl. ¶¶ 29, 52-56.) Specifically:

**Doe 1 (@erenturkmen and @ProfesorTurkmen)** posted graphic descriptions of sexual acts between Ms. A and Epstein, claimed to know the identities of the women involved, and encouraged his followers to "connect the dots." (Compl. ¶¶ 7, 30–35.) His followers then posted Plaintiff's name, picture, phone numbers, and places she lived, and Doe 1 never corrected them. (Compl. ¶¶ 36–40.)

**Doe 2 (@BasakSezen2)** posted Plaintiff's first name and falsely connected her to Ms. A, posted an image of Plaintiff's resume containing her full name and employment and education history, and posted an excerpt from a government document describing explicit sexual conduct. Doe 2 also published Plaintiff's complete residential history, which included a Pennsylvania city. (Compl. ¶¶ 19, 41-45, 59.)

**Doe 3 (@tanrizeusu)** identified Plaintiff by her full name, falsely stated that she was Ms. A, who had a sexual association with Epstein, and published her full name, age, residential addresses, personal telephone numbers, family members' names, and a photograph of Plaintiff. (Compl. ¶¶ 46-49.)

**Doe 4 (@tcdefence)** posted that Plaintiff was one of the people who ran Epstein's sexual trafficking organization. (Compl. ¶¶ 50-51.)

Plaintiff denied the connection to Epstein in Defendants' threads in February 2026, but Defendants left their false posts online, where they continue to generate thousands or more views, numerous comments and reactions, and multiple reposts. (Compl. ¶¶ 60-61.) As a result, Plaintiff has suffered severe emotional distress, fear for her safety and that of her family, and panic attacks requiring mental health counseling; reputational harm; economic losses, including lost employment; and ongoing harm from the continued availability of the false posts, which have generated over one million views collectively. (Compl. ¶ 63.)

Plaintiff has taken extensive steps to preserve her anonymity and safety since Defendants' posts went viral, including quitting her job and moving from Pennsylvania to New York. (Compl. ¶¶ 3, 6.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 10(a) generally requires parties to identify themselves by name in pleadings. However, a plaintiff may proceed under a pseudonym where she can show "(1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). The decision whether to allow a party to proceed anonymously rests within the sound discretion of the district court. *Id.* at 407.

The Third Circuit has articulated a non-exclusive list of factors for courts to consider. *Id.* at 409. Factors that typically favor anonymity include:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quotation omitted). Factors that cut against anonymity include:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quotation omitted). The "heart of the inquiry" is whether "the Plaintiff risk[s] severe harm by proceeding under his or her real name" and whether that "risk [is] outweighed by a particularly strong public interest in knowing the Plaintiff's identity." *Doe v. Pennsylvania Dep't*

*of Corr.*, 2019 WL 5683437, at *2 (M.D. Pa. Nov. 1, 2019). Courts have found a reasonable fear of severe harm in cases involving deeply private matters, including "abortion, birth control, transexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Megless*, 654 F.3d at 408 (quotation omitted). But these are merely illustrative; the court "will always be required to consider those [other] factors which the facts of the particular case implicate." *Id.* at 409.

## III. ARGUMENT

### A. The Megless Factors Overwhelmingly Favor Allowing Plaintiff to Proceed Anonymously

#### *1. Plaintiff Has Kept Her Identity Confidential*

Plaintiff has taken extensive steps to preserve her anonymity since Defendants' posts went viral. She quit her job out of fear that someone might come to her workplace and harm, humiliate, or falsely expose her, and she moved from Pennsylvania to New York so that those who viewed the posts could not locate her. (Compl. ¶¶ 3, 6.) This factor favors anonymity. *See Doe v. United Behav. Health*, No. CIV.A. 10-5192, 2010 WL 5173206, at *2 (E.D. Pa. Dec. 10, 2010) (granting pseudonym where party kept health status confidential); *cf. Doe v. City of Philadelphia*, 2026 WL 2364225, at *3 (E.D. Pa. Aug. 13, 2026) (finding factor cut against pseudonymity where plaintiff had already publicly identified himself).

#### *2. Plaintiff's Fear of Severe Harm Is Substantial and Well-Founded*

This is the most compelling factor in this case. Plaintiff's fear of severe harm from further public association with the Epstein files is well-founded and supported by an extensive, documented pattern of real-world consequences suffered by individuals – both culpable and innocent – whose names have surfaced in connection with these disclosures.

Plaintiff herself has already been doxxed repeatedly: her resume, residential history, telephone numbers, photograph, and residential addresses were posted online by Doe 2, Doe 3, and a follower of Doe 1. (Compl. ¶¶ 39, 42, 48, 59, 88–89.) That alone demonstrates actual severe harm and reason to fear its recurrence.

The risk is not hypothetical. Since the Department of Justice began releasing Epstein-related documents in February 2025 – ultimately totaling over 3.5 million pages – survivors and other named individuals have reported receiving death threats and sustained online harassment, in what victim-rights attorneys characterized as "the single most egregious violation of victim privacy in one day in United States history." *See Doe 1 v. United States*, 2026 WL 1075243, at *2 (N.D. Cal. Apr. 20, 2026) (allowing plaintiffs suing over DOJ disclosures of personally identifying information in Epstein files to proceed anonymously in light of evidence that those named in the files have experienced threats, harassment, and been traumatized).

The risk of reputational and professional devastation is equally concrete. The public record demonstrates that mere *association* with the Epstein files – regardless of culpability – triggers career-ending consequences. Since January 2026, numerous high-profile individuals have lost positions, faced regulatory sanctions, or been forced to resign solely because their names appeared in the disclosed documents. The danger of false or erroneous association is particularly well-illustrated by the case of former Irish Minister for Justice Alan Shatter, who was never connected to Epstein in any way but was nonetheless compelled to file a High Court defamation action after social media users erroneously claimed that a travel itinerary showed

Epstein had met with him.[1] Minister Shatter received a payment of damages and a public apology from a separate political party whose spokesman had also falsely portrayed him as having met Epstein – confirming that once a false Epstein association enters public discourse, the resulting stigma is immediate, severe, and resistant to correction absent extraordinary legal intervention.

Being publicly and falsely associated with Jeffrey Epstein's sexual crimes is among the most damaging and stigmatizing portrayals imaginable. (Compl. ¶ 83.) Courts have recognized that cases "present[ing] a risk of social stigma" support a finding of reasonable fear of severe harm. *Doe v. City of Philadelphia*, 2026 WL 2364225, at *2 (E.D. Pa. Aug. 13, 2026). Plaintiff's circumstances present perhaps the paradigmatic case for such a finding.

#### ***3. Compelling Plaintiff to Litigate Under Her Real Name Would Compound the Very Injury She Seeks to Redress***

Requiring Plaintiff to proceed under her true name would force her to re-associate her identity with Epstein's sexual crimes as a condition of seeking justice. This Court's docket is publicly accessible, and any filing under Plaintiff's real name would immediately and permanently link her to the very false accusations that form the basis of her claims. The litigation itself would "compound the plaintiff's injury." *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (considering whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity" when balancing interests in pseudonymous filing).

---

[1] *See Shatter v. Murphy*, H.P.2026.0001316 (filed Dec. 3, 2025), https://courts.ie/high-court-search?caseRecordId=H.P.2026.0001316. The Irish High Court does not publish filings online in the manner of U.S. Federal Courts, but the filings' existence is confirmed by credible sources. *See, e.g.,* Mark Tighe, *Ex-Justice Minister Alan Shatter Sues TD Paul Murphy Over Epstein Claims*, The Irish Times (Mar. 13, 2026), https://www.irishtimes.com/politics/2026/03/13/ex-justice-minister-alan-shatter-sues-td-paul-murphy-over-epstein-claims/.

The undesirability of this outcome is patent. A private citizen who has been falsely accused of sexual involvement with a convicted sex trafficker should not be forced to choose between enduring further harm to her safety and reputation and abandoning her right to seek redress.

### *4. The Public Interest Favors Maintaining Plaintiff's Confidentiality*

There is a substantial public interest in maintaining the confidentiality of Plaintiff's identity. Other courts have already concluded that anonymity is appropriate in Epstein-related litigation. *See Doe 1 v. United States*, 2026 WL 1075243, at *2 (N.D. Cal. Apr. 20, 2026) (class plaintiffs in Epstein-related data case allowed to sue anonymously); *Doe v. Black*, 2026 WL 1102540, at *34 (S.D.N.Y. Apr. 23, 2026) (denying renewed request to de-anonymize plaintiff alleging Epstein-related sexual abuse and trafficking, and noting that "all plaintiffs and claimants in the [related Epstein class action] are anonymous"). This Court should reach the same conclusion. *See Doe v. City of Philadelphia*, 2026 WL 2364225, at *3 (E.D. Pa. Aug. 13, 2026) (evaluating "public interest" factor, in part, based on how courts had handled requests by similarly-situated litigants).

Moreover, there is an atypically weak public interest in knowing Plaintiff's identity. Plaintiff is not a public figure – she is a private citizen who had a single, brief encounter with Epstein more than a decade ago and rejected any further contact. (Compl. ¶¶ 20-23, 65.) The public's interest in this litigation relates to the Epstein files, accountability, and the consequences of online defamation – none of which requires knowledge of Plaintiff's true identity.

### *5. Plaintiff Has No Illegitimate Ulterior Motives*

Plaintiff seeks anonymity solely to protect herself and her family from the consequences of Defendants' tortious conduct. (Compl. ¶ 5.) She is not seeking to evade accountability or gain

an unfair advantage. To the contrary, Plaintiff is the party seeking to *hold Defendants accountable* for their defamatory and tortious conduct. There is nothing to suggest any illegitimate motive.

### B. The Factors Typically Weighing Against Anonymity Do Not Overcome Plaintiff's Showing

The *Megless* factors that typically weigh against anonymous filings do not demonstrate a particularly strong public interest in knowing Plaintiff's identity here.

#### *1. The Universal Public Interest in Access to Litigant Identities Is Outweighed Here*

There is always some public interest in access to the identities of litigants. *Doe v. City of Philadelphia*, 2026 WL 2364225, at *4 (E.D. Pa. Aug. 13, 2026). But this universal interest is present in every case and, standing alone, would always defeat pseudonymity. The *Megless* framework requires this Court to weigh this interest against the countervailing factors – and here, the countervailing factors are overwhelming. Plaintiff's documented fear of severe harm, her prior doxxing, the potential for compounded injury, and the absence of any significant public interest in her identity all outweigh the generalized interest in open proceedings.

#### *2. There Is No Particularly Strong Interest in Knowing Plaintiff's Identity*

Plaintiff is not a public figure and has not injected herself into any public controversy. (Compl. ¶ 65.) She is a private citizen whose name appeared in the Epstein files solely because the Department of Justice erroneously released an unredacted copy of a resume she provided more than a decade ago. (Compl. ¶ 27.) The subject matter of this litigation – online defamation and doxxing – does not create a heightened public interest in knowing the identity of the victim. To the contrary, the sensitive nature of the false accusations (imputing sexual involvement with a

convicted sex offender and trafficker) counsels in favor of protecting Plaintiff's identity. *See Megless*, 654 F.3d at 408.

### *3. There Is No Opposition to Plaintiff's Request*

Defendants have not yet been served and have not opposed this Motion. There is no indication that any opposition would be legitimately motivated. This factor is neutral or favors Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the *Megless* factors overwhelmingly favor permitting Plaintiff to proceed under a pseudonym. Plaintiff has demonstrated a well-founded fear of severe harm – grounded in actual doxxing, the extreme stigma associated with false Epstein-related accusations, and the documented pattern of real-world consequences suffered by those named in the Epstein files. Compelling Plaintiff to litigate under her real name would compound the very injury she seeks to redress. The public interest does not require disclosure of a private citizen's identity under these circumstances, and no legitimate countervailing interest has been identified.

* * *

Plaintiff respectfully requests that this Court grant her Motion to Proceed Under a Pseudonym and enter the accompanying proposed Order protecting her identity from public disclosure.

Dated: November 6, 2026

**FOX ROTHSCHILD LLP**

*/s/ Samantha Banks*

Samantha Banks (PA Bar No. 319401)
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, Pennsylvania 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
sbanks@foxrothschild.com

Joseph L. Meadows (pro hac to be filed)
Stefan Palys (pro hac to be filed)
2020 K Street NW, Suite 500
Washington, DC 20006
Tel: (202) 461-3100
Fax: (202) 461-3102
jmeadows@foxrothschild.com
spalys@foxrothschild.com

*Counsel for Plaintiff Jane Doe*